# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **AMERICAN HOSPITAL ASSOCIATION,** *et al.*,<br><br>   **Plaintiffs,**<br><br>    **v.**<br><br>**SYLVIA M. BURWELL, in her official capacity as SECRETARY OF HEALTH AND HUMAN SERVICES,**<br><br>   **Defendant.** | Civil Action No. 14-851 (JEB) |

## <u>MEMORANDUM OPINION</u>

Two and a half years ago, the American Hospital Association and affiliated entities asked this Court to issue a writ of mandamus to compel the Secretary of Health and Human Services to adjudicate pending Medicare-reimbursement appeals in compliance with statutorily imposed deadlines. Plaintiffs sought relief from a morass in which hundreds of thousands of appeals were languishing in a highly backlogged administrative process. Now, after a motion for summary judgment, a motion to dismiss for lack of jurisdiction, an appeal to and remand from the D.C. Circuit, and a motion to stay, the Court can finally grant Plaintiffs a remedy. The incantation of mandamus does not generate an instantaneous cure-all for complex problems, however, and so this Opinion focuses on the form the relief will take.

## I. Background

Understandably frustrated by long delays in the administrative-appeal process for Medicare-reimbursement claims, Plaintiffs filed this suit in May 2014. <u>See</u> ECF No. 1

(Complaint).  Although sympathetic, the Court was reluctant to intervene and thus initially

concluded that mandamus was not warranted and dismissed the case for lack of jurisdiction.

Am. Hosp. Ass'n v. Burwell (AHA I), 76 F. Supp. 3d 43, 56 (D.D.C. 2014).  The D.C. Circuit

reversed and remanded with instructions for further proceedings, including a direction to this

Court to "determine whether 'compelling equitable grounds' now exist to issue a writ of

mandamus."  Am. Hosp. Ass'n v. Burwell (AHA II), 812 F.3d 183, 192 (D.C. Cir. 2016).

　　　Upon remand, the Secretary moved to stay the proceedings until September 30, 2017, the

close of the next full appropriations cycle, to permit HHS to pursue various administrative and

legislative efforts designed to tackle the significant appeals backlog.  See ECF No. 30 (Motion to

Stay).  The Court denied that request.  Am. Hosp. Ass'n v. Burwell (AHA III), 2016 WL

5106997 (D.D.C. Sept. 19, 2016).  In so doing, it concluded that there existed "equitable grounds

for mandamus."  Id. at *8.  Recognizing, though, that it could not practicably order HHS to

resolve each of the pending appeals by the statutorily prescribed deadlines, the Court asked the

parties to address in briefing the specific forms mandamus relief should take.  See Minute Order

of Oct. 3, 2016.  They have now done so, although HHS has also asked the Court to reconsider

its prior decision to grant mandamus.

　　　For the curious reader, a more detailed account of the administrative-appeal process for

Medicare-claim reimbursements and the causes and scope of the backlog can be found in the

Court's prior Opinions.  See AHA III, 2016 WL 5106997, at *1-2; AHA I, 76 F. Supp. 3d at 46-

48.

II.     **Analysis**

   A.  Plaintiffs' Proposals

      As requested by the Court, Plaintiffs devote serious thought to possible actions the Secretary could undertake to address the backlog of administrative appeals.  They propose three categories of discrete interventions and, in the alternative, an overall timetable by which the Secretary must achieve reductions in the backlog.  See ECF No. 39 (Motion) at 4-13.

      As to the reforms, Plaintiffs suggest that the Secretary should: (1) offer reasonable settlements to certain broad groups of Medicare providers and suppliers; (2) for some subset of disputed Medicare claims, alleviate the financial strain on providers by deferring their duty to repay the Secretary and tolling the accrual of interest on those claims for waiting times beyond the statutory deadlines; and (3) impose financial penalties on Recovery Audit Contractors for high reversal rates by Administrative Law Judges.  See Mot. at 4-11.

      Correctly anticipating that the Court might prefer to avoid directing the particulars of the Secretary's backlog-reduction efforts, however, Plaintiffs alternatively propose that it simply require the Secretary to meet certain numeric reduction targets through 2020, leaving to her discretion the means by which such targets are to be achieved.  Id. at 12-13.  Plaintiffs' proffered timetable is as follows:

- 30% reduction from the current backlog of cases pending at the ALJ level by December 31, 2017;
- 60% reduction from the current backlog of cases pending at the ALJ level by December 31, 2018;
- 90% reduction from the current backlog of cases pending at the ALJ level by December 31, 2019;
- Elimination of the backlog of cases pending at the ALJ level by December 31, 2020.
- On January 1, 2021, [granting of] default judgment in favor of all claimants whose appeals have been pending at the ALJ level without a hearing for more than one calendar year.

Id. at 12.  As a reminder, ALJ review is the third of four levels in the administrative-appeal

process set out in the Medicare Act and is the step at which the backlog and delays are especially

significant.  See AHA III, 2016 WL 5106997, at *1-2.

     B.  Defendant's Response

     The Secretary counters that all of Plaintiffs' proposed remedies are inappropriate.  See

ECF No. 41 (Opposition) at 11.  But first, she devotes nearly seven pages of briefing to repeating

the same plea that animated her previous stay request: she is hard at work, progress is in sight,

and mandamus should not issue.  Id. at 1-7.  Recounting various backlog-reduction efforts

undertaken by HHS since moving for a stay in spring 2016, Defendant contends that the good

faith and impact of those efforts shift the balance of factors against mandamus.  Id.

     As directed by the Court of Appeals, this Court analyzed the factors counseling in favor

of and against mandamus in its prior Opinion.  See AHA III, 2016 WL 5106997, at *3-5.  The

Secretary's latest brief does not provide enough evidence of progress to tilt the scales.

According to a declaration from Ellen Murray, HHS's Assistant Secretary for Financial

Resources and Chief Financial Officer, the estimated impact of some of the administrative

actions that HHS outlined in the last round of briefing is much greater than the agency previously

thought, and HHS has expanded the scope of some of those interventions based on promising

results thus far.  See ECF No. 41-1 (Declaration of Ellen Murray), ¶¶ 2-22.  Although the Court

is glad to learn that the backlog-reduction projections are better than earlier reported, they are

still unacceptably high.  The Secretary does not point to any categorically new administrative

actions and, critically, continues to promise the elimination of the backlog only "with legislative

action" — a significant caveat.  See Opp. at 6; AHA III, 2016 WL 5106997, at *7-8 (explaining

that the Court "must draw the conclusion that Congress is unlikely to play the role of the cavalry

here"). The Secretary's renewed arguments notwithstanding, equitable grounds for mandamus remain.

    C. <u>Resolution</u>

Defendant next questions the legality and propriety of Plaintiffs' three proposed initiatives and offers a set of her own. <u>See</u> Opp. at 7-23. The Court need not dive into the parties' debate over those competing reforms, however. It continues to believe that it should intrude as little as possible on the Secretary's specific decisionmaking processes and operations, and it thus concludes that Plaintiffs' proposed timetable with deadlines for set backlog-reduction targets is the preferable approach. <u>See AHA III</u>, 2016 WL 5106997, at *4 (noting the "agency's 'comparative institutional advantage' in this domain") (quoting <u>In re Barr Labs, Inc.</u>, 930 F.2d 72, 74 (D.C. Cir. 1991)); <u>AHA II</u>, 812 F.3d at 192 (flagging the risk of "infringing on the authority and discretion of the executive branch"). The Court appreciates that Plaintiffs could have chosen to demand immediate relief; instead, they have commendably offered a thoughtful and reasonable four-year plan for this complex problem.

Defendant nonetheless argues that imposing such a timetable would require her to "make payment on Medicare claims regardless of the merit of those claims," which "would squarely conflict with the Medicare statute." Opp. at 22-23 (citing 42 U.S.C. §§ 1395f, 1395g(a), 1395y(a)(1)(A)). But the timetable does not so require. It simply demands that the Secretary figure out how to undertake "proper claim substantiation" within a reasonable timeframe. <u>Id.</u> at 22. The Secretary's protest, moreover, elides the fact that the statutory prohibition on improper payments is not the only legal constraint on HHS's claims-adjudication process. The agency is also bound by statutorily mandated deadlines, of which it is in flagrant violation as to hundreds of thousands of appeals. <u>AHA II</u>, 812 F.3d at 190-92; Murray Decl., Exh. 1. Satisfying the

statutory demands for both accuracy and timeliness will no doubt prove challenging, but such is the task at hand.

Turning to logistics, the Secretary does not otherwise dispute the specific dates and reduction percentages in Plaintiffs' proposed timetable. The Court therefore adopts the end-of-calendar-year deadlines and the mandatory-percentage reductions listed above — *i.e.*, 30% reduction from the current backlog of cases pending at the ALJ level by December 31, 2017; 60% by December 31, 2018; 90% by December 31, 2019; and 100% by December 31, 2020.

Defendant does take issue, however, with the last bullet point in Plaintiffs' timetable: the suggestion that, as of January 1, 2021, default judgment be entered in favor of all claimants whose appeals have been pending at the ALJ level without a hearing for more than one calendar year. See Mot. at 12; Opp. at 22-23. Requiring default judgment in all such pending appeals if the benchmarks are not met, the Secretary contends, would "create perverse incentives for providers and suppliers to appeal non-meritorious claims." Opp. at 22. That is, "[a]ny provider could pursue any claim with the expectation that the end result would be payment, no matter how little merit in the claim." Id. at 23. That result, in turn, "could endanger the Medicare Trust Funds." Id.

The Court agrees that this prospect raises some concern; as a result, it will not automatically enter default judgments in all qualifying appeals on January 1, 2021. Instead, if the Secretary fails to meet the above deadlines, Plaintiffs may move for default judgment or to otherwise enforce the writ of mandamus. Cf. Fed. R. Civ. P. 55(d) ("A default judgment may be entered against the United States, its officers, or its agencies only if the claimant establishes a claim or right to relief by evidence that satisfies the court.").

Finally, Plaintiffs ask that the Court order the Secretary to file regular status reports.  <u>See</u> Mot. at 13.  The Secretary believes quarterly reports — every 90 days — would be appropriate, <u>see</u> Opp. at 23, and Plaintiffs do not presently object, despite having initially requested reports every 60 days.  <u>Compare</u> Mot. at 13, <u>with</u> ECF No. 43 (Reply) at 12.  The Court will thus adopt the Secretary's timeline.  The reports should communicate HHS's progress in reducing the backlog and should include updated figures for the current and projected backlog, as well as a description of any significant administrative and legislative actions that will affect the backlog.

## III.     Conclusion

For the foregoing reasons, the Court will grant Plaintiffs' Motion for Summary Judgment and deny Defendant's Cross-Motion for Summary Judgment.  Although the Court will administratively terminate the case, it will retain jurisdiction in order to review the required status reports and rule on any challenges to unmet deadlines.  A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  December 5, 2016