**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AMERICAN HOSPITAL ASSOCIATION, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )     Civil Action No. 14-cv-851-JEB |
| | ) |
| ALEX M. AZAR II, in his official capacity as | ) |
| SECRETARY OF HEALTH AND | ) |
| HUMAN SERVICES, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S
MOTION FOR AN EXTENSION OF TIME**

Plaintiffs oppose the Department of Health and Human Services's (HHS) motion for a six-week extension to file its response to Plaintiffs' remedy proposals. HHS asserts that the extension is necessary primarily to compile additional data from the end of the most recent fiscal quarter. But the Court stayed the case for 90 days precisely so that HHS could compile this information; an additional six weeks is uncalled for now. And HHS's other proffered justifications do not warrant six weeks of additional delay in this already stale case.

1.     At its March 22, 2018 hearing, the Court directed the case placed in abeyance for 90 days. Dkt. No. 81 at 36. The Court ordered that, at the end of the 90 days, the Plaintiffs would submit specific proposals for alleviating the backlog and HHS would submit any response within 14 days of Plaintiffs' filing. *Id.* In setting this schedule, the Court understood that the HHS would use the 90-day abeyance to compile additional information about the backlog and the efficacy of its current efforts to combat it. *See id.* ("The government's response, Mr. Cartier,

could be a combination of status report: look, things are better in these 90 days so we don't need anything.").

2.    It is no state secret that a fiscal quarter ended on June 30.  HHS nonetheless did not object—either at the hearing or immediately following it—that the Court's schedule did not line up with HHS's window for gathering the very latest statistics.  Instead, HHS waited to raise its concerns the same week its response to Plaintiffs' proposals were due.  *See* Mot. ¶ 3.

3.    HHS's bid for delay is harmful in two ways.  First, and most obviously, it postpones the case for an additional month-and-a-half.  Second, it sandbags Plaintiffs.  If HHS had raised the issue earlier, the parties could have adjusted the briefing schedule so that Plaintiffs could have crafted their proposals in light of the third-quarter data.  But now Plaintiffs can address it only defensively, in reply.

4.    It also is unclear why it should take HHS six weeks to compile statistics from the quarter ending June 30, 2018.  The third quarter was only 13 weeks long.  And HHS's justification could be deployed anytime it pleases.  The quarters march forward inexorably—four a year—and HHS can always find more numbers to crunch.  This case cannot continue to linger as HHS waits for the latest statistics.

5.    HHS's other arguments for a six-week extension are unavailing.  HHS argues that it needs additional time to update workload projections in light of the recent appropriations in the Consolidated Appropriations Act, 2018, Pub. L. No. 115-141, tit. II, 132 Stat. 348, 739 (2018).  Mot. ¶¶ 2-3.  But the Consolidated Appropriations Act was enacted on *March 23*.  HHS does not explain why it could not update workload projects in the more than three months since it received the additional appropriations.

6.      HHS also contends that it needs additional time to evaluate Plaintiffs' proposals. But Plaintiffs' proposals were either already made to HHS during previous negotiations or in direct responses to the Court's concerns at the March 22 hearing.  HHS should not need an additional six weeks, on top of the time already granted it, to formulate a response.

7.      Finally, HHS argues that an extension is required, in part, because Joel McElvain, the Assistant Director supervising this matter, will be leaving the Department of Justice.  Mr. McElvain's departure was first reported on June 12.  *See* Devlin Barrett and Matt Zapotosky, *Senior Justice Department Lawyer Resigns After Shift on Obamacare*, Wash. Post, June 12, 2018, https://tinyurl.com/ybp35u27.  A new supervisor could have been brought on board weeks ago.  In any case, the line attorneys remain the same, eliminating any prejudice to HHS.

8.      Plaintiffs will be prejudiced by the HHS's requested extension.  As HHS well knows, the backlog is causing Plaintiffs "real-world problems."  *American Hosp. Ass'n v. Price*, 867 F.3d 160, 172 (D.C. Cir. 2017) (Henderson, J., dissenting).  And the hardships continue to mount.  The Northern District of Texas recently granted a home health care agency emergent relief against recoupment pending a decision on its claim that recoupment in the face of the years-long ALJ backlog denies the home health care agency procedural due process.  *See Family Rehabilitation, Inc. v. Azar*, No. 3:17-cv-3008-K, 2018 WL 3155911 (N.D. Tex. June 28, 2018). The court explained that if recoupment were allowed, the home health care agency "would be forced to permanently close its doors long before receiving an ALJ hearing."  *Id.* at \*6.  This holding cannot be a surprise to HHS or its counsel; the same line attorney represents HHS in both cases.

9.      To be clear:  The problem is not *just* that HHS is requesting an extension for its response to Plaintiffs' proposals.  It is the cumulative effect of HHS's continued and repeated

extension requests in this case.  By our count, HHS has sought seven extensions since this case

began in May 2014.  *See* Dkt. Nos. 9, 27, 33, 40, 62, 74, 83.  Plaintiffs, by contrast, have sought

none.  Indeed, the only time that HHS has sought *acceleration* was in the D.C. Circuit, when it

was under the Court's previous mandamus order and was the appellant.  HHS cannot dawdle

when Plaintiffs are burdened by the backlog and press for speed when it is the one under the gun.

The Court should reject the HHS's bid to extend this already elongated case for another six

weeks.

      For the foregoing reasons, the motion should be denied.

                        Respectfully submitted,

                        /s/ Catherine E. Stetson
                        Catherine E. Stetson (D.C. Bar. No. 453221)
                        Sheree Kanner (D.C. Bar No. 366926)
                        Sean Marotta (D.C. Bar No. 1006494)
                        HOGAN LOVELLS US LLP
                        555 Thirteenth Street, N.W.
                        Washington, D.C. 20004-1109
                        (202) 637-5600
                        cate.stetson@hoganlovells.com

                        *Attorneys for Plaintiffs*

Dated:  July 5, 2018.

**CERTIFICATE OF SERVICE**

I certify that on July 5, 2018, the foregoing was electronically filed through this Court's

CM/ECF system, which will send a notice of filing to all counsel, who are registered users.

/s/ Catherine E. Stetson