# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN HOSPITAL ASSOCIATION, *et al.*, <br><br>          Plaintiffs, <br><br>          v. <br><br> ALEX AZAR, <br><br>          Defendant. | Civil Action No. 14-851 (JEB) |

## MEMORANDUM OPINION

This case is now before the Court for a third time, following a second remand from the D.C. Circuit. Plaintiffs here are the American Hospital Association and three other regional hospitals and health-care systems. Fed up by the delays in the administrative-appeals process for Medicare-reimbursement claims, they filed this suit in May 2014. Plaintiffs sought mandamus to compel the Secretary of the Department of Health and Human Services to comply with the statutory deadlines the Medicare Act imposes on the appeals process. See ECF No. 1 (Complaint). The Circuit initially instructed this Court to weigh the equities to determine whether mandamus should issue. After it did so and concluded that the writ was appropriate, the Circuit reversed and remanded the matter for this Court to make a threshold determination of whether it was possible for the Government to comply with the mandamus order. See Am. Hosp. Ass'n v. Price (AHA V), 867 F.3d 160, 161 n.1 (D.C. Cir. 2017). As this time around the Government agrees that recent funding has made compliance possible within four years, the Court will impose such a deadline.

1

## I. Background

Over four years ago, Plaintiffs filed this action to compel the Secretary to eliminate the long delays in the administrative-appeals process for Medicare-reimbursement claims. Details on this process, the causes of the delay, and the resulting backlog have been laid out in the Court's prior Opinions. See Am. Hosp. Ass'n v. Burwell (AHA III), 209 F. Supp. 3d 221, 222–24 (D.D.C. 2016); Am. Hosp. Ass'n v. Burwell (AHA I), 76 F. Supp. 3d 43, 46–48 (D.D.C. 2014). Suffice it to say that the Government has not been complying with certain statutory timelines governing Medicare-reimbursement appeals. The question has always been what, if anything, the Court can and should do about it.

Initially, the Court declined to intervene and dismissed the case. See AHA I, 76 F. Supp. 3d at 56. The D.C. Circuit reversed and remanded, holding that mandamus jurisdiction existed and instructing this Court to "determine whether 'compelling equitable grounds' . . . exist to issue a writ of mandamus." Am. Hosp. Ass'n v. Burwell (AHA II), 812 F.3d 183, 192 (D.C. Cir. 2016). It noted that mandamus would "likely" be "require[d]" unless HHS made "meaningful progress" towards reducing its substantial backlog. Id. at 193.

On remand, following these instructions, this Court recognized that "equitable grounds [existed] for mandamus" but observed that it "[did] not possess a magic wand that, when waved, [would] eliminate the backlog." AHA III, 209 F. Supp. 3d at 230. It thus asked the parties to address in briefing the form any relief should take. See Minute Order of Oct. 3, 2016. For example, should the Court set particular deadlines for backlog reductions or were there specific program requirements it should impose? Concluding that "it should intrude as little as possible on the Secretary's specific decisionmaking processes and operations," the Court ruled that setting a "timetable with deadlines for set backlog-reduction targets [was] [a] preferable

approach" to giving HHS specific instructions as to how to clear the backlog. See Am. Hosp. Ass'n v. Burwell (AHA IV), 2016 WL 7076983, at *3 (D.D.C. 2016). It thus entered a deadline-based mandamus order. Id. Specifically, it required the following cuts: "30% reduction from the [then-existing] backlog of cases pending at the ALJ level by December 31, 2017; 60% by December 31, 2018; 90% by December 31, 2019; and 100% by December 31, 2020." Id.

The D.C. Circuit again reversed, holding that this Court had not specifically made a finding that it was possible for the Secretary to comply with the order. See AHA V, 867 F.3d at 162. Although graciously acknowledging that this Court had "thoughtfully and scrupulously weighed the equities," id., the Court of Appeals invoked Immanuel Kant's dictum that "ought implies can," id. at 161 n.1, and instructed that "[o]n remand, the Court should determine in the first instance whether, in fact, lawful compliance with the timetable is impossible." Id. at 168. The Circuit elaborated that "if [this] Court finds that the Secretary failed to carry his burden of demonstrating impossibility, it could potentially reissue the mandamus order without modification." Id. at 168–69. It therefore "remand[ed] to [this] Court to evaluate the merits of the Secretary's claim that lawful compliance would be impossible." Id. at 170.

While the Circuit may rely on Kant, this Court believes that a set of less cerebral philosophers may provide guidance — the Brothers Grimm. For, like their Goldilocks, this Court cannot always determine whether the soup it should brew is too hot or too cold. In a third effort to get the recipe just right, it asked the parties on remand to again brief the issue. The Secretary initially continued to argue that "mandamus should not issue" because HHS was already implementing "extraordinary measures" to address the backlog, rendering any further lawful measures impossible. See ECF No. 66-1 (Def. MSJ) at 2, 5. Notwithstanding this Court's reluctance to interfere with the agency's decisionmaking, the Secretary also "request[ed]

3

that" — should the Court grant relief — it "direct specific measures, rather than impose timetables." Id. at 5. Plaintiffs focused their briefing on various measures they contend the Secretary could take to minimize delay and reduce the backlog. See ECF. No. 72-1 (Pl. MSJ & Opp.) at 6, 9, 12.

This briefing was followed by a hearing, which the Court ordered "to address specific proposed mandamus remedies to reduce the backlog, aside from fixed deadlines." Minute Order of Feb. 27, 2018. The Court then stayed the case for 90 days to see how HHS's new measures fared. See Minute Order of March 22, 2018. Further briefing on non-deadline remedies followed. See ECF Nos. 82 (Plaintiffs' Response on Non-Deadline Remedies), 86 (Defendant's Response to Plaintiff's Proposed Non-Deadline Remedies), 87 (Plaintiffs' Reply). To summarize, the proposed specific remedies focused on three areas: reform of Recovery Audit Contractors (RACs); changes to the agency's settlement practices; and ameliorative measures to address the backlog's financial impact on providers. See Pl. Response at 2, 6, 8. The Government contends that it has already significantly reformed RAC review and its settlement practices and that the further reforms Plaintiffs propose would be unlawful, impossible, or counterproductive. See Def. Resp. at 6–9, 11, 13. Sounding in a similar key, the agency also maintains that the ameliorative steps Plaintiffs propose are a combination of unlawful and unwise. Id. at 18–19, 22–23, 24.

As the foregoing discussion makes clear, the Court faced an unenviable task — and one that required a set of competencies that do not squarely fall within the judicial realm. Then, when least expected, a *deus ex machina* arrived: HHS's "repeated requests" for additional funds to address the appeals backlog were finally answered. Id. at 3. On March 23, 2018, Congress appropriated for that purpose $182.3 million, which the agency projects will "more than doubl[e]

its FY 2017 disposition capacity." Id. In fact, HHS now "projects that, at current funding levels, OMHA's adjudication capacity will increase over FY 2017 levels by 23% in FY 2018, 42% in FY 2019, 108% in FY 2020, and approximately 122% in FY 2021 and 2022," meaning that "the Secretary will be able to eliminate the backlog entirely in FY 2022." Id. at 1, 4. Given this development, and the Court's continued reluctance to impinge unnecessarily on the Secretary's discretion, a deadline-based order seemed a renewed possibility. Plaintiffs signaled their continued willingness to go that route as well. See Pl. Reply at 4. The Court thus held another hearing "to address potential deadline-based remedies" on October 23, 2018. See Minute Order of Oct. 11, 2018. This resolution follows.

## II. Analysis

The Circuit gave this Court a narrow task on remand: "to evaluate the merits of the Secretary's claim that lawful compliance would be impossible." AHA V, 867 F.3d at 170. The Government has made this task simple via its projection that the additional funding will enable the agency to steadily reduce the backlog year by year until it is eliminated in FY 2022. See ECF No. 86-2 (Medicare Appeals Workload Projections) at 1. The Court therefore can easily conclude that it would be possible for the Secretary to comply with a mandamus order requiring that the backlog be reduced and then eliminated on the precise timeline that Defendant itself has projected. In other words, the Government cannot claim it is impossible to follow its own projections. The Court, accordingly, will order that the Government reduce the backlog annually by the percentage amount memorialized there. Those amounts — rounded to the nearest percentage point in the agency's favor and compared to the currently projected FY 2018 backlog of 426,594 appeals as a baseline — come to a 19% reduction by the end of FY 2019; a 49%

reduction by the end of FY 2020; a 75% reduction by the end of FY 2021; and elimination of the backlog by the end of FY 2022. Id.

The Government contends that, although these reduction targets do reflect its own projections, its compliance with a mandamus order reflecting them may nevertheless become impossible if Congress does not continue to appropriate the same level of funding. See Hearing Transcript at 5:12-14. The Court appreciates this caveat. Should a change in circumstances — not limited to an appropriations shortfall — render lawful compliance with the order impossible, therefore, Defendant can return and request modification at that time. Cf. Rufo v. Inmates of Suffolk County Jail, 502 U.S. 367, 384 (1992).

Before its task is done, the Court must address two additional issues — one raised by Defendant and one by Plaintiffs. First, the Government maintains that the Court should not limit its analysis to a possibility finding but should first revisit the equities to determine whether mandamus is still even appropriate. Given the changed circumstances — *viz.*, the additional funding and backlog-reduction efforts the agency is already undertaking — the Secretary argues that the equities now counsel against issuing the writ. See Tr. at 7:10-25–8:1-5. The Court cannot agree. The Circuit repeatedly provided a narrow instruction on remand for this Court to make a finding regarding the possibility of compliance. See AHA V, 867 F.3d at 168, 168–69, 170. Having "[found] that the Secretary failed to carry his burden of demonstrating impossibility," this Court will "reissue the mandamus order." Id. at 168–69

Even if the Court were to depart from that mandate and reweigh the equities at this stage, it would still conclude that mandamus should issue. The factors courts in this Circuit generally consider are as follows:

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other

> indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

Telecommunications Research & Action Center v. FCC (TRAC), 750 F.2d 70, 80 (D.C. Cir. 1984) (internal quotations, citations, and emphasis omitted); see also AHA II, 812 F.3d at 189–90. The TRAC factors, however, are "hardly ironclad," TRAC, 750 F.2d at 80, and "[e]ach case must be analyzed according to its own unique circumstances." Air Line Pilots Ass'n, Int'l v. Civil Aeronautics Board, 750 F.2d 81, 86 (D.C. Cir. 1984).

Those factors weigh in favor of granting mandamus here. Despite the one-year timeline contemplated in the Medicare Act, reimbursement claims languish for years. See AHA I, 76 F. Supp. 3d at 45–47. Health and welfare are indisputably at stake: hospitals with "money tied up in the appeals process" have a difficult time maintaining facilities and procuring supplies and may even "avoid admitting certain types of patients" whose treatment might be the subject of a lengthy review process. See AHA II, 812 F.3d at 193. In other words, the "lengthy payment delays . . . affect hospitals' willingness and ability to provide care," id., and therefore prejudice both hospitals and their patients. Now that the agency has received an influx of funding, moreover, it has not offered the Court a basis to conclude that an order would adversely affect "agency activities of a higher or competing priority." TRAC, 750 F.2d at 80.

Although the Secretary cites the changed circumstances, Plaintiffs rightly point out, see Tr. at 20:11-16, 21:7-10, that one important fact remains: a backlog of hundreds of thousands of appeals. See Workload Projections at 1. It is true that Congress's attention to the matter via

7

appropriation generally "counsel[s] against issuance of the writ." AHA II, 812 F.3d at 192. Here, however, the appropriation merely makes compliance possible, and the Court hesitates to conclude that the very possibility of compliance weighs too heavily against issuance of a mandamus order. Finally, while the agency's own "efforts to reduce the delays" also generally weigh in its favor, id., they cannot compensate here for the other factors counseling for mandamus. In so concluding, the Court is not abrogating the presumption that "executive agency officials will discharge their duties in good faith." CTIA-Wireless Ass'n v. FCC, 530 F.3d 984, 989 (D.C. Cir. 2008). Yet, "the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed." TRAC, 750 F.2d at 80 (internal quotations and citations omitted).

Finally, Plaintiffs urge that, in addition to imposing a series of deadlines, this Court should include in any mandamus order the requirement that the Government take three additional specific steps: 1) a reduction of interest charged on funds that HHS has yet to recoup from providers while appeals are pending; 2) an allowance for providers to "rebill" their claims for six months following the issuance of this order; and 3) an explicit requirement that the agency maintain its current programs to fight the backlog. See Tr. at 16:2-15–17:1-13; see also Pl. Response at 8, 10, 13. The first two measures may ameliorate the adverse effects providers suffer when their appeals languish in the backlog, but they would not necessarily improve delays. While the Court appreciates that the backlog poses difficulties for providers, it will not order either of those measures where they are not directly related to the claim giving rise to the mandamus order — namely, that delays in excess of a year are unlawful under the Medicare Act. Plaintiffs have offered no instance in which a court granting mandamus has accorded relief so beyond the scope of the jurisdictional hook, and the Court sees no compelling reason to break

new ground here.  The Court will likewise decline to order the final measure — *viz.*, maintenance of the agency's programs — lest it diminish the Government's ability to innovate in different ways to meet the deadlines in the order as efficiently as possible.  Where the agency is held to a set of deadlines, it is unnecessary — and unwise — to further specify the steps it must take.

**III.     Conclusion**

For the foregoing reasons, the Court will grant the mandamus relief described.  A separate Order consistent with this Opinion will issue this day.

/s/ James E. Boasberg
JAMES E. BOASBERG
United States District Judge

Date:  November 1, 2018