UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| AMERICAN HOSPITAL ASSOCIATION, *et al.*,<br><br>          Plaintiffs,<br><br>          v.<br><br>XAVIER BECERRA, in his official capacity as Secretary of Health and Human Services,<br><br>          Defendant. | Civil Action No. 14-cv-00851 (JEB) |

## DECLARATION OF MCARTHUR ALLEN

I, McArthur Allen, declare as follows:

1. I am the Chief Administrative Law Judge for the Office of Medicare Hearings and Appeals (OMHA) within the Department of Health and Human Services (HHS or Department), which organizationally, is located within the Office of the Secretary. I have held this position since November 8, 2020. Among my duties, I oversee the third level of administrative review, also known as the Administrative Law Judge (ALJ) level of review, for individual Medicare coverage and payment claims under Medicare Parts A, B, C, and D, as well as appeals arising from claims for entitlement to Medicare benefits and disputes of Part B and D premium surcharges.

2. The statements made in this declaration are based on my personal knowledge, information contained in agency files, and information furnished to me in the course of my official duties.

3.     OMHA has been working diligently to reduce the backlog of 426,594 appeals projected pending at OMHA in accordance with this Court's November 1, 2018 order (Order), as well as appeals received after the date of the Order that are subject to, but have not been decided within, the 90-day time frame set forth in 42 U.S.C. § 1395ff(d)(1)(A) and applicable regulations (the "backlog"). The Order requires the then-projected FY 2018 backlog of 426,594 appeals be reduced by 19% by the end of FY 2019, by 49% by the end of FY 2020, by 75% by the end of FY 2021, and requires the "elimination of the backlog by the end of FY 2022," which is the quarter ending September 30, 2022. OMHA met the first three reduction targets. Specifically, OMHA reduced the starting number of appeals identified in the Order by over 31% by the end of FY 2019, by over 61% by the end of FY 2020, and by over 85% by the end of 2021. OMHA achieved these first three reduction targets even though more than 105,016 additional appeals were received by OMHA during these three fiscal years. In addition, OMHA achieved this backlog reduction while designating beneficiary-initiated appeals as priority appeals, with the goal of adjudicating these appeals within 90 days, unless another time frame applies, to mitigate the potential impact of the agency's workload on adjudication time for individual Medicare beneficiaries. OMHA also adjudicated expedited Part D beneficiary appeals that have a 10-day adjudication time frame as set forth in 42 CFR § 423.2016(b)(5)(i) during this time period.

4.     Although the quarter three fiscal year 2022 Medicare Appeals Dashboard is not final, OMHA anticipates that this data will show that, during the first three quarters of FY 2022, an additional 31,540 appeals were received by OMHA. In addition, OMHA anticipates that the data will show that, as of June 30, 2022, with one quarter left in fiscal year 2022, the total number of appeals pending at OMHA is 28,277, and 19,802 of those appeals exceed the 90-day statutory deadline. Of those 19,802 appeals, 98.8% were received after the date of the Order, and, as of

August 31, 2022, approximately 450 appeals coded as inpatient hospital appeals and 275 appeals coded as inpatient rehabilitation facility appeals were pending beyond the deadline, which are 3.7% of the 19,802 appeals. This data captures appeals with events that extend the 90-day statutory deadline applicable to Medicare Part A and B appeals, either by delaying the commencement of adjudication time frames or extending the adjudication timeframe (tolling events). *See, e.g.,* 42 C.F.R. § 405.1014(b) (appellant submits an incomplete request for appeal); *id.* § 405.1030(e) (appellant requests hearing to be rescheduled); *id.* § 42 C.F.R. § 1018(b) (delay in the submission of evidence); *id.* § 405.1037(f) (party requests discovery); *id.* § 405.1016(d)(2)(ii) (appellant asks for stay); *see also* OMHA Case Processing Manual, Ch.7, §7.2. Over the past several years, because of the size of the OMHA's workload, OMHA did not consistently track extension or tolling events; as a result, those events are underreported, and it is likely that more appeals are within the decision deadlines than the data reflects. This data also includes some appeals not subject to the 90-day timeline of 42 U.S.C. § 1395ff(d)(1)(A), such as Part A and Part B appeals when a Quality Improvement Organization has issued a reconsideration under section 1155 of the Act; appeals arising from organization determinations made by Part C Medicare Advantage organizations; and appeals of Medicare eligibility and entitlement determinations, Part B and D Income-Related Monthly Adjustment Amount determinations, and Part B late-enrollment penalty determinations made by the Social Security Administration.

5. The anticipated OMHA backlog as of June 30, 2022 (19,802) is a 97.7% reduction in the number of appeals pending at the height of the OMHA's pending workload, 886,418 appeals pending at the end of FY 2015. The 19,802 appeals represent over a 95% reduction in the number of appeals referenced in the Order (426,594). Moreover, virtually all (99.99%) appeals

3

that were pending at OMHA as of the November 1, 2018 Order have been decided as of September 2, 2022; the remaining appeals represent some of the more complex appeals pending at OMHA either because of their subject matter or evidentiary or procedural issues, but OMHA expects them to be decided by the end of FY 2022. In addition, as of September 6, 2022, just under 1,500 RAC appeals remain in the backlog, which is a 99.7% reduction from the number of RAC appeals pending at the end of FY 2015 (437,524), the highest number of pending RAC appeals at the end of a fiscal year.

6. Although the data for the last quarter of 2022 will not be available until after September 30, 2022, based on OMHA's projections, there will likely be approximately 12,000 appeals pending at OMHA over the 90-day statutory deadline on September 30, 2022, which would be more than a 97% reduction in the number of appeals referenced in the Order. This projection is based on the current docket for each ALJ, their projected new appeal receipts, and their average disposition rate.

7. Although OMHA exceeded the first three reduction targets, which were based on projections provided by the Secretary nearly four years ago, it has now become clear that reducing the backlog down to absolute zero by the end of FY 2022 is not reasonably possible, and agency projections did not previously take into account the new appeals that would be filed after the mandamus order that by their nature, or because of the timing of their filing, could not be decided within the 90-day statutory deadline. Now that OMHA has drastically reduced the backlog to a small fraction of what it once was, OMHA has been able to analyze the nature of the remaining appeals to make this determination. There are several reasons OMHA will be unable to eliminate the backlog entirely by FYE 2022 as projected in 2018:

- <u>Covid-19 Public Health Emergency (Covid-19 PHE)</u>: With the additional appropriation from Congress in 2018 to increase adjudication capacity, OMHA established four new field offices and one satellite office throughout the country. These new offices were not fully operational until just before March 2020, when physical offices were closed due to the Covid-19 PHE. At the time, many appeals files were not available in an electronic format and were still processed in paper. OMHA rotated staff into offices to convert volumes of paper case files to electronic format so ALJ teams could conduct business off-site without convening together in physical offices. This delayed ALJ dispositions of older cases, many of which had case files only in paper. The Covid-19 PHE negatively affected the ability of OMHA adjudicators to decide appeals. Specifically, the amount of time spent processing appeals was reduced because adjudicators and staff were forced to adjust to a virtual environment; the agency developed and conducted training on new processes and teams worked to implement those new processes; and the agency's in-office presence was staffed on a volunteer basis that led to staff taking time away from regular job duties to support continuity of OMHA's essential functions during the agency's pandemic telework posture.

- <u>Big-box Appeals</u>: Appeals commonly called "big-box" appeals consist of a single appeal contesting prior administrative determinations on 30 or more individual claims, which often cannot all be decided within 90 days given their complicated nature and the high number of claims involved. See ¶ 8 for additional detail. As of August 19, 2022, there were 433 big-box appeals

5

pending at OMHA beyond 90-day statutory deadline. From FY 2019 through FY 2021, big box appeal receipts as a percentage of total receipts, steadily increased.

- Unusually Complex Cases: Some cases with fewer than 30 claims can involve unusually complex issues requiring extensive research or have equally difficult evidentiary or procedural issues, which can take longer than 90 days to adjudicate. For example, scientific advancements leading to new technology may require adjudicators and staff to research new legal authorities or review peer-reviewed literature and scientific community standards to determine the coverage rules and authorities that are applicable to the new technology.

- Case Mix: The case mix of appeals has changed from repetitive issues filed in large batches, such as hospital appeals involving patient status, to a wider variety of issues and providers, resulting in fewer opportunities for the efficiencies provided when adjudicating appeals with common issues. When OMHA receives a high volume of appeals with the same or similar issues, adjudicators and staff are able to become familiar with the applicable law and subject areas, which in turn leads to faster decision-making, with the potential for scheduling combined hearing to address multiple appeals.

- Change in Withdrawal and Dismissal Rate: The rate at which appellants withdrew appeals before an ALJ hearing and OMHA dismissed appeals, including those pursuant to administrative settlements, decreased from the assumptions underlying the 2018 projections. From fiscal years 2014-2018, the

average withdrawal and dismissal rate was 33.3%, and the 2018 projections assumed that the rate would increase as OMHA worked through the backlog and started assigning appeals. The average withdrawal and dismissal rate was 50.5% in fiscal year 2020 and 60.4% in fiscal year 2021. OMHA projected in 2018 that the withdrawal and dismissal rate would gradually decline in 2022 as the backlog was near elimination, but those actual declines were more rapid than projected: 30.3% in the first quarter of fiscal year 2022, 22.4% in the second quarter, and 19.4% in the third quarter. This unexpected decrease in the withdrawal and dismissal rate significantly reduced the disposition rate at OMHA because a larger than expected percentage of appeals required a greater investment of time prior to disposition.

- <u>Disposition Rate Slowed by Older Appeals</u>: The overall ALJ disposition rates slowed for a short period when ALJs focused adjudicating older and more complex appeals at higher rates. As discussed above, complex appeals and big-box cases take longer to decide because they tend to require significant substantive research and often present unique procedural and evidentiary issues that are time-consuming to resolve, such as incomplete hearing requests, changes in appellant entities and ownership, missing evidentiary or procedural records, and voluminous administrative records.

- <u>Other Unforeseen Circumstances</u>: At times, assigned appeals experience a delay due to an ALJ illness, transfer to another agency, or retirement. The applicable regulations do not permit a tolling event when a hearing is rescheduled at an ALJ's request.

7

8. Given the nature of big-box appeals, they cannot all be decided within 90 days even if no OMHA backlog existed. While big-box appeals address at least 30 claims in a single appeal, some of these appeals address hundreds or thousands of claims, and often involve complicated and sophisticated statistical sampling and extrapolation to a larger universe of claims. Generally, these appeals are a result medical review audits by CMS contractors, and they are combined by CMS contractors as big-box appeals before the appeal reaches OMHA given the common issues of law or fact involved. Because of the large number of claims typically involving multiple Medicare beneficiaries, these appeals are much more complex and time-consuming for ALJs to decide than an appeal addressing a single claim, although the practice of combining claims in this way allows for more efficient adjudication than if the big-box appeal had been broken up into individual appeals. These appeals are time and resource intensive at all stages of processing at the ALJ-level of appeal. For example, they require exhibiting potentially thousands of pages of medical and procedural records for multiple beneficiaries and involve potentially more parties and participants, assessment and resolution of evidentiary and procedural issues, pre-hearing conferences, long and complex hearings occasionally involving experts, and detailed decisions addressing the all the beneficiaries and claims, all the issues in the case, and all the evidence presented. Big-box appeals that involve a statistical sample add an additional layer of complexity, requiring thorough evaluation of the validity of the sample. Finally, throughout the process, OMHA must take extra precautions to protect Personal Identifiable Information and Personal Health Information.

9. OMHA believes it will be able to further reduce the number of backlogged appeals over two additional quarters beyond the fourth quarter of 2022, and achieve a 98% backlog reduction by the end of quarter two of FY 2023. OMHA cannot guarantee that it will completely

eliminate any appeals pending over the 90-day statutory deadline for Medicare Parts A and B because of big-box and unusually complex appeals and because OMHA does not have control over, nor can it predict with certainty in advance, what new appeals will be filed, when those appeals will be filed, how many appeals will be filed at the same time, or the overall volume of appeals, their subject matter, size, or complexity.

10. From 2008 to 2011, prior to OMHA's large influx of appeal receipts, OMHA decided approximately over 90% of appeals subject to § 1395ff(d)(1)(A) within the applicable deadline. As is the case today, those appellants whose appeals were not decided within the 90-day timeframe were able to escalate those appeals to the Medicare Appeals Council as the statute provides if they chose not to wait for an ALJ hearing decision.

11. To meet the Court's Order, OMHA increased adjudication capacity with the additional appropriation from Congress and implemented workload initiatives, such as OMHA's Settlement Conference Facilitation Program and OMHA's Statistical Sampling Program, to reduce the number of pending appeals. Furthermore, the March 2017 final rule streamlined adjudication processes and provided clarity to reduce some delays, as well as provided authority for attorney adjudicators to issue decisions when a decision can be issued without an ALJ hearing, dismissals when an appellant withdraws his or her request for an ALJ hearing, remands as provided in 42 C.F.R. §§ 405.1056 and 423.2056 as finalized in this rule or at the direction of the Council, and reviews of Qualified Independent Contractors (QIC) and Independent Review Entities (IRE) dismissals. Furthermore, OMHA launched several internal workload initiatives such as facilitating the sharing of exhibiting and decision-writing workload across OMHA field offices, created new data dashboards and workload reports, established new workload

reassignment procedures to maximize adjudication capacity, and established case processing goals for appeals subject to the Court's Order.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed on 9/8/22 in Arlington, Virginia

*McArthur Allen*
McArthur Allen