**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AMERICAN HOSPITAL ASSOCIATION, *et al.* | |
| Plaintiffs, | No. 1:14-cv-00851-JEB |
| v. | |
| XAVIER BECERRA, in his official capacity as Secretary of Health and Human Services, | |
| Defendant. | |

<u>**JOINT STATUS REPORT**</u>

The parties submit this Joint Status Report pursuant to this Court's October 26, 2022 Order, which directed the parties to "set[] forth the backlog-reduction percentage as of March 30, 2023, any further statistical information they wish to include, and a brief summary on how the Court should proceed."  Order at 2, ECF No. 116

**I.      Defendant's Report on Backlog-Reduction Percentage and Additional Statistical Information**

In its October 26, 2022 Order, the Court ordered the Secretary of Health and Human Services (HHS) to reduce the backlog of Medicare reimbursement appeals pending before administrative law judges (ALJs) in the Office of Medicare Hearings and Appeals (OMHA) by 98% by the end of the second quarter of fiscal year (FY) 2023 (March 31, 2023).  HHS has met and surpassed that goal.  *See* Declaration of McArthur Allen ¶ 3 (attached) ("Allen Decl.").  When the Court issued the mandamus order on November 1, 2018, the backlog pending before ALJs in OMHA was projected to be 426,594.  As of March 31, 2023, there were only 663 appeals that were initiated but have not been adjudicated within 90 days, assuming applicability of the statutory

deadline in 42 U.S.C. § 1395(d)(1)(A).  *Id.*  That number represents a 99.84% reduction of the backlog.  *Id.*

Not only has HHS surpassed the 98% reduction target, but 623 out of the 663 backlogged cases are subject to tolling events or waivers of the adjudication time frame.  That is, one or more events have tolled or waived the 90-day statutory deadline that applies to those appeals, either by delaying the commencement of or extending the adjudication time frame.  Allen Decl. ¶ 4; *see also* Def.'s Mot. for Modification of the Mandamus Order at 9 n.1, ECF No. 110 ("Def.'s Mot.").  Because an appeal's deadline is not adjusted until the tolling event or waiver time frame closes, it is not possible for OMHA to determine how many and which of these 623 appeals have actually exceeded the statutory time frame; however, it is likely that some of those 623 appeals have not exceeded the 90-day deadline.  *Id.* ¶ 4.[1]  *Id.*

Of the 663 backlogged appeals, only approximately 7 are acute inpatient hospital appeals and none are acute inpatient rehabilitation facility appeals.  *Id.* ¶ 5.  In addition, there are only 15 backlogged recovery audit contractor (RAC) appeals, which is a 99.96% reduction from the 437,524 that were pending on September 30, 2015, at the end of FY 2015.  *Id.* ¶ 5.  And approximately 58 of the 663 backlogged appeals are so-called "big box" appeals, which consist of prior administrative determinations on 30 or more—and sometimes hundreds or thousands of—individual claims.  *Id.*

The 663 appeals also include some appeals that are not subject to the 90-day time frame in 42 U.S.C. § 1395ff(d)(1)(A), such as Part A and Part B appeals when a Quality Improvement

---

[1] Previously, because of the size of OMHA's workload, OMHA did not consistently track extensions or other tolling events that delay or waive the adjudication deadline; as a result, those events were underreported in workload data.  Allen Decl. ¶ 4.  OMHA is now more consistently tracking extensions and other tolling events affecting appeal deadlines.

Organization has issued a reconsideration; appeals of organization determinations made by Part C Medicare Advantage organizations; and appeal determinations made by the Social Security Administration, such as Medicare eligibility and entitlement determinations, and Part B late-enrollment penalty determinations. *Id.*

The approximate percentage composition by year of the 663 backlogged appeals as of March 31, 2023 is as follows:

- 76.6% of backlogged appeals are from FY 2023 (508 appeals)

- 24.17% of backlogged appeals are from FY 2022 (147 appeals)

- 0.60% of backlogged appeals are from FY 2021 (4 appeals)

- 0.45% of backlogged appeals are from FY 2020 (3 appeals)

- 0.15% of backlogged appeals are from FY 2019 (1 appeal)

*Id.* ¶ 6.  The quartile-age of all pending appeals is as follows:

- 25th percentile: 17 days

- Median: 36 days

- 75th percentile: 58 days

*Id*.  HHS also notes that dispositions of appeals continue to exceed receipts.  For the first two quarters of FY 2023, OMHA received approximately 20,885 new appeals and disposed of 33,364 appeals.  *Id.* ¶ 3.

Although Plaintiffs previously asked the Court to require HHS to provide "the aggregate amount in controversy in the remaining backlogged appeals," Pls.' Opp'n to Def.'s Mot. to Modify Mandamus Order at 23, ECF No. 111 ("Pls.' Opp'n"), OMHA cannot reliably provide that data.  *See* Allen Decl. ¶ 8.  The amount in controversy for an appeal is a case-by-case determination made by the ALJ or attorney adjudicator, and the amount payable to the provider is calculated only

after a provider receives a favorable or partially favorable decision. *See* 42 C.F.R. § 405.1006(d). The data that OMHA receives from contractors at the outset of an appeal typically includes only the amount that the provider billed, rather than the Medicare allowable amount, and billed amounts are typically significantly higher than the Medicare allowed amount and do not account for applicable deductibles, coinsurance, or copayments. Allen Decl. ¶ 8.

## II.   Plaintiffs' Position on How the Court Should Proceed

As we have stated since the beginning of this case, every appeal that languishes in the backlog is a claim for services rendered that the provider believes in good faith it is owed money for and that Congress has determined should have already been decided. Plaintiffs recognize that their suit and the Court's mandamus order have led to dramatic reductions in the backlog that leave hospitals and the federal government in a far better position than they were over eight years ago, have held the previously out-of-control Recovery Audit Contractor program accountable, and have been the catalyst for significant improvements to OMHA's case-adjudication capacity. Even so, HHS's submission indicates that some backlog remains. Plaintiffs therefore now take no position on whether the Court can or should dissolve the mandamus order, leaving it to the Court's sound judgment whether the standards for modification have been met.

At the same time, Plaintiffs believe HHS's latest data is incomplete. For instance:

- HHS does not provide more-granular information regarding "big-box" appeals, ECF No. 111 at 13 n.2, 17-18, 21, 23, even though the Court previously said it would be "better informed" by statistical information "along the lines of what Plaintiffs suggest," ECF No. 116 at 2. Even after further inquiry by Plaintiffs' counsel, HHS told Plaintiffs that it does not have readily available information on how many claims have been consolidated into most of the pending big-box appeals. Yet HHS represents that each big-box appeal can contain "hundreds or

thousands of claims," meaning that the backlog could be significantly larger than HHS reports.

- HHS does not explain why a handful appeals have been pending for *years* when they should have been decided in 90 days.

- HHS's quartile information is not particularly informative.  That is because what matters for the Court's analysis is not the age of all appeals, but the age of *backlogged appeals*.  *See* ECF No. 111 at 19 (asking for the "the 25th percentile, median, and 75th percentile age of backlogged appeals").

Despite these unresolved issues, Plaintiffs have received assurances that there is no significant backlog of inpatient acute hospital appeals, including within the single big-box inpatient acute hospital appeal that HHS has identified.  Whatever the Court chooses to do, Plaintiffs will remain vigilant and hold HHS to account if a backlog again begins to develop.

## III.   Defendant's Position on How the Court Should Proceed

HHS respectfully submits that the mandamus order has served its purposes and that Court supervision is no longer necessary.  HHS has met—and even exceeded—the interim targets established by the Court.  As of the end of the second quarter of FY 2023, the number of Medicare Part A and Part B appeals pending before OMHA for longer than 90 days was only 663.  This constitutes a reduction of 99.84% from the 426,594 appeals that were projected to be pending at the time of the mandamus order, and the reduction is greater than the 98% target set by the Court in its October 26, 2022 Order.  Moreover, of those 663 appeals, the vast majority—all but 40, or 94%—are currently subject to tolling events or waivers of the statutory deadline for an appeal, meaning that some of those appeals likely are not, in fact, backlogged.  Still others are types of appeals not subject to the statutory deadline at all.

The data now available also show that the number of acute inpatient hospital appeals remaining in the backlog—*i.e.*, those that are relevant to Plaintiffs' claims of harm—has continued to dwindle and now stands at only 7 appeals, which is out of approximately six thousand hospitals that participate in the Medicare program.  Furthermore, HHS has nearly eliminated the number of backlogged RAC appeals, which is now only 15.  Going forward, moreover, HHS anticipates that OMHA's adjudication capacity will be sufficient to continue to further reduce the backlog and adjudicate the vast majority of incoming appeals within the statutory deadline.[2]

In light of HHS's overwhelming success in reducing the backlog, and for the reasons explained in HHS's Motion for Modification of the Mandamus Order, which is incorporated by reference here, *see generally* Def.'s Mot.; Def.'s Reply Mem. in Support of Their Mot. for Modification of the Mandamus Order, ECF No. 113, HHS respectfully submits that the Court may appropriately conclude that the purposes of the mandamus order have been fulfilled, and that the order may be deemed to have been satisfied.

None of the equitable factors that this Court and the D.C. Circuit have identified weigh in favor of continued enforcement of the mandamus order under the current circumstances.  As HHS explained in its prior briefing, the agency could not completely eliminate the backlog unless it settled, or stipulated to pay, every appeal still pending on its 90th day.  This is so because of the presence of big-box and unusually complex appeals, such as those involving new technology or

---

[2] Although Plaintiffs now suggest that HHS should provide additional information about the number of claims in the 58 backlogged appeals still at issue, they did not request that data in in their September 23, 2022 filing, and accordingly the Court did not suggest that HHS may wish to include it in this Joint Status Report.  *See* Pls.' Opp'n at 23; Order at 2.  Plaintiffs also note that there remains only a single backlogged big-box inpatient acute hospital appeal.  To provide context for the Court, undersigned counsel provided that information to Plaintiffs' counsel on April 7, 2023, while conferring regarding this Joint Status Report.  Undersigned counsel further informed Plaintiffs' counsel that there are 41 claims in that big-box appeal.

unique procedural or evidentiary issues.  And OMHA does not have control over, nor can it predict with certainty, what new appeals will be filed, their volume, or timing.

Moreover, Congress has demonstrated its awareness and attention to the backlog by appropriating funds that have permitted OMHA to reduce the backlog to a tiny fraction of its former size, and—in any of the modest number of appeals that remain pending beyond the statutory deadline—the appellant may escalate its appeal to the fourth level of administrative review, as contemplated by Congress.  *See* 42 U.S.C. § 1395ff(d)(3)(A).  HHS has also made good faith efforts to reduce the backlog, using all the tools at its disposal to achieve extraordinary success, and dispositions continue to exceed receipts in this fiscal year.  Finally, Plaintiffs no longer suffer any meaningful injury from the backlog, considering that there are only approximately 7 backlogged appeals involving acute inpatient hospitals.

For these reasons, and those stated in Defendant's Motion for Modification of the Mandamus Order, HHS respectfully submits that continued oversight by this Court is no longer required and requests that the Court dissolve the mandamus order.

Dated: April 7, 2023

/s/ Sean Marotta
Sean Marotta (D.C. Bar No. 1006494)
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004-1009
Telephone: (202) 637-4881
sean.marotta@hoganlovells.com

*Attorney for Plaintiffs*

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

JEAN LIN
Special Litigation Counsel
Federal Programs Branch

 */s/ Bradley P. Humphreys*
BRADLEY P. HUMPHREYS
Senior Trial Counsel
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005

Phone: (202) 305-0878
E-mail: bradley.humphreys@usdoj.gov

Of Counsel:

SAMUEL R. BAGENSTOS
General Counsel
JANICE L. HOFFMAN
Associate General Counsel
SUSAN MAXSON LYONS
Deputy Assistant General Counsel
  for Litigation
KIRSTEN FRIEDEL RODDY
Attorney
U.S. Department of Health and
  Human Services

*Counsel for Defendant*